**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Kenneth H. KATSCHKE and Paul E. Pickle, Defendants-Appellants.**

**No. 14815.**

United States Court of Appeals Seventh Circuit.

July 15, 1965.

Rehearing Denied Sept. 14, 1965.

Maurice J. Walsh, Edward J. Calihan, Jr., Chicago, Ill., for defendants-appellants.

Edward V. Hanrahan, U. S. Atty., John Peter Lulinski, John Powers Crowley, Gerald M. Werksman, Asst. U. S. Attys., Chicago, Ill., for plaintiff-appellee.

Before SCHNACKENBERG and KNOCH, Circuit Judges, and MERCER, District Judge.

SCHNACKENBERG, Circuit Judge.

Kenneth H. Katschke and Paul E. Pickle, defendants, appeal from a judgment [1] of conviction by the district court, on a finding of guilty on counts 1, 2 and 5 of an indictment, charging violations of 18 U.S.C.A. § 657 [2] and § 1006,[3] Pickle

---

**23.** This case involved a Coca-Cola franchise with no guarantee of renewal except industry practice.

**1.** We construe this appeal to be from two separate judgments rendered against defendants.

**2.** "Whoever, being an officer * * * of * * * any * * * savings and loan * * * association * * * willfully misapplies any moneys, funds, credits, securities or other things of value belonging to such institution * * * shall be fined not more than $5,000 or impris-

oned not more than five years, or both; * * *."

**3.** "Whoever, being an officer * * * of * * * any * * * savings and loan * * * association * * * with intent to defraud * . * * participates or shares in or receives directly or indirectly any money, profit, property, or benefits through any transaction, loan, * * * of any such * * * association, shall be fined not more than $10,000 or imprisoned not more than five years, or both. * * *"

588

being charged as an aider and abettor in violation of 18 U.S.C.A. § 2.

As revealed by the findings of fact of the district court, specially made pursuant to 18 U.S.C.A. rule 23(c), various persons and enterprises involved in this case are:

| | |
|---|---|
| Kenneth H. Katschke | President, director and large stockholder of Tinley Park Savings and Loan Association (Tinley);[4] director and stockholder of Gold Star Homes, Inc. |
| Paul E. Pickle | President and principal stockholder in the following:<br>Central States Mortgage Company (Central States) whose principal business was acting as mortgagee and mortgage broker;<br>Gold Star Homes, Inc. (Gold Star) a manufacturer of prefabricated housing units including apartments;<br>C.M.O. Builders, building contractors; and other companies engaged in building and construction activities. |
| A.D.K. Enterprises | (A.D.K.), a partnership composed of Roy Ardizzone, Richard H. DeRuiter and Stanley W. Kempa engaged in building and selling housing units, including prefabricated apartments purchased from Gold Star and erected on land held by the First National Bank of Evergreen Park, as Trustee under Trust No. 225, a land trust of which the partners of A.D.K. were the beneficiaries. (The bank is hereinafter called the "Trustee".) |

Central States sold mortgage loans to Tinley. Katschke and Pickle were jointly interested in Lincolnway Homes, which was engaged in the building of new homes.

In findings, 5–24, the district court found, as follows:

5. Under date of July 26, 1961, Pickle personally delivered to Tinley certain documents, including identified notes payable to Central States executed by the Trustee and guaranteed individually by the three partners of A. D. K., appraisals, applications, photostats of Torrens Receipts and Affidavits and Waivers, with respect to lots 8, 9 and 27 of the lots held by the Trustee under Trust No. 225. In April, 1961, Central States had secured a commitment from Service Savings and Loan Association (hereinafter called "Service") to purchase first mortgage loans of $145,000 on each of these lots. Mortgages dated June 6, 1961, and assignments thereof to Service, dated

4. A Savings and Loan Association, the accounts of which were insured by the Federal Savings and Loan Insurance Corporation.

July 6, 1961, and recorded with the Registrar of Titles of Cook County on July 7, 1961, although in the possession of Central States, were not delivered to Tinley on July 26.

6. On two occasions shortly before July 26, Pickle asked an employee of Tinley, one Rebecca Nilsson, whether the money was ready on the Evergreen Park loans and when advised that she knew nothing about them said he would speak to Katschke about the matter.

7. On July 26, Lyle E. Nelson, an officer and attorney for Tinley, turned over to Mrs. Nilsson the documents on the three lots delivered to Tinley by Pickle and instructed her to issue a check for $350,000, payable to Central States. After examining the documents Mrs. Nilsson went to Katschke's office where he, Pickle and Nelson were having coffee, and asked whether she could disburse funds in the absence of any evidence of title. Nelson referred her question to Katschke who told her to issue the check, which she did.

8. After receipt of the check which was drawn on the Bremen State Bank, Pickle went to the Midlothian State Bank (hereinafter called "Midlothian") which was closed because the day was Wednesday. Pickle saw Eugene J. Winston, Executive Vice President and Cashier, presented the $350,000 check from Tinley payable to Central States to him, and asked if he could cash it. Winston replied that he could not because the check was payable to a corporation and because he did not have that much cash on hand. Pickle explained that he needed immediate funds or credit. Winston suggested he take the check for certification to the Bremen State Bank on which it was drawn. Pickle demurred, saying that the Bremen bank was closed. Winston then offered to issue a Midlothian cashier's check in the same amount. Pickle asked if the cashier's check could be made payable to him

personally. Winston informed him that it would have to be made payable to Central States, the payee of the original Tinley check. Pickle agreed and Winston drew a Midlothian cashier's check payable to Central States in the amount of $350,000.

9. Still on July 26, 1961, Pickle endorsed the Midlothian cashier's check on behalf of Central States as its President and turned the check over to Katschke who in turn endorsed it for deposit and deposited it in the account of Katschke Land Development Co. at the Continental Illinois National Bank and Trust Company of Chicago (hereinafter called "Continental").

10. Katschke Land Development Co. was an Illinois corporation, all of the shares of which were owned by Katschke and his wife, both of whom were also directors and officers, Katschke being President and his wife being Secretary and Treasurer.

11. On July 28, 1961, pursuant to previous authorization and instructions from Katschke, the Continental charged the account of Katschke Land Development Co. in the amount of $343,060, which it had disbursed to one Walter J. Riley in payment for one thousand and nine (1,009) shares of Chatham State Bank common stock. This left a balance of $15,308.84 in the Katschke Land Development account at the Continental.

12. Katschke and Pickle knew that none of the proceeds of the $350,000 were turned over to the Trustee, A. D. K. or its partners, the ostensible borrowers from Tinley.

13. Under date of August 14, 1961, Tinley issued a check for fifty thousand dollars ($50,000) payable to Central States, and on August 22, a check for twenty-eight thousand four hundred ninety-three dollars and forty-four cents ($28,493.44), also payable to Central States. Both checks were charged to the same

three loans as the previous $350,000, these loans having been given Tinley loan numbers 568, 569 and 570. The latter two checks were deposited in Central States' account at the Bremen State Bank.

14. On August 29, 1961, Pickle instructed an employee of Central States, one Geraldine Palumbo, to assemble or prepare appropriate notes, mortgages and assignments for four loans on lots 10, 11, 25 and 26 of the lots held by the Trustee under Trust No. 225.

15. Notes and mortgages to Central States on these four lots had been executed in June, 1961, by the Trustee and the notes guaranteed by the partners of A. D. K., all on or about the same time as those on lots 8, 9 and 27 involved in the July 26 transaction. On August 29, pursuant to Pickle's instructions, Miss Palumbo prepared assignments to Service of the four mortgages on lots 10, 11, 25 and 26, which were executed by Pickle on behalf of Central States on the same date and recorded with the Registrar of Titles of Cook County on September 5, 1961.

16. On the same date, August 29, Pickle instructed Miss Palumbo to endorse to Tinley the four notes secured by the mortgages simultaneously being assigned to Service and to take the notes, application forms and appraisals over to Tinley but to send the mortgages and the assignments thereof to the Registrar of Titles for recording. Pickle also instructed her to take a blank Central States check with her to Tinley.

17. Upon arrival at Tinley, Miss Palumbo presented the documents (except the notes which were not delivered until August 31, 1961) with respect to lots 10, 11, 25 and 26 to Mrs. Nilsson, received a check for $440,000 payable to Central States and filled in the blank check to Tinley for $435,244.68, the then outstanding balance of the three earlier loans on lots 8, 9 and 27. She then received back the notes, appraisals and application forms, relating to such loans, which had been previously deposited with Tinley on July 26, 1961. She then returned to Central States' office with the documents. The $440,000 check was subsequently deposited in Central States' account at the Bremen State Bank on August 31, 1961.

18. Still on August 29, 1961, the documents in question together with mortgages, mortgage assignments, insurance policies, affidavits, waivers of liens and other related documents were delivered to Service to effect the three $145,000 construction loans on lots 8, 9 and 27, which Service had committed in April 1961, to purchase.

19. On August 29, 1961, no construction had started on the four lots numbered 10, 11, 25 and 26. Construction did not begin on such lots until some time in September and was not 60% completed on any of the lots until November or December, 1961.

20. Commencing in December, 1961, the partners of A. D. K. made inquiries of Pickle as to why they were not receiving the 60% of the four loans on lots 10, 11, 25 and 26, since construction was more than 60% completed. In mid-December, Ardizzone and DeRuiter had a conference with Pickle at his office on the subject at which time he told them to see Katschke at Tinley Park who would explain the program which had been worked out for them. On the same day, Ardizzone and DeRuiter saw Katschke who advised them that conditions at Tinley Park were such that the 60% of the loans could not be paid at that time but assured them he would work out arrangements for them to receive 40% currently if they would bring in the necessary waivers of liens.

21. Although they brought in the waivers, the money was not forthcoming and Ardizzone and DeRuiter

continued to press for payment. Ardizzone and Katschke had a conference in January at which Katschke commented that he had three attorneys and was one step ahead of persons he was dealing with. In mid-February, Katschke, Ardizzone, De-Ruiter and one Lawrence Kahn, an employee of the Chatham State Bank, went to lunch together. Ardizzone stated that A. D. K. was in desperate straits financially and needed money right away. Katschke then explained his program for the acquisition of a controlling interest in the Chatham State Bank, acknowledged that the 60% of the four loans had been used for this purpose, and added that he had been successful and their "financial heartaches" were over. He also observed that his wife had packed his bags and if the Chatham Bank deal did not go through he was ready to leave the country. Finally, he advised them to return to the Chatham Bank the following Monday at which time they would receive a loan of at least $25,000.

22. On Monday, February 19, 1961, a loan in the amount of $25,000 was granted to Ardizzone, De-Ruiter and Kempa on their individual signatures. When Ardizzone subsequently objected to the transaction, asking how the partners were going to repay the note or pay the interest, Katschke told him not to worry, that it would all be taken care of and that he, Katschke, would pay the interest.

23. On several occasions, Pickle told employees of one or another of his companies that he was participating in the acquisition of the Chatham State Bank with Katschke. In urging the salesman of Gold Star Homes, Norman Whitehouse, who dealt with A. D. K., to get more loans from the partnership, Pickle told Whitehouse he could raise about $325,000 on the A. D. K. loans which could be used to purchase the Chatham Bank.

24. Katschke, with Pickle's assistance, diverted $350,000 of Tinley Park's funds to his wholly owned company, Katschke Land Development Company, and used them to purchase 1,009 Chatham State Bank common shares. Although ostensibly the proceeds of three real estate mortgage loans, the funds were disbursed by Tinley Park on Katschke's instructions without the requisite mortgages and other security documents being obtained. Subsequently in August 1961, four similar loans without mortgages, etc., were made by Tinley Park on Katschke's instructions with Pickle's assistance, the proceeds of which were used to retire the earlier three loans and thereby to extend the period during which Katschke personally had the use of the $350,000 obtained from the first three ostensible loans.

Defendants in this court contend that these findings of the district court are clearly erroneous. We reject this contention. They are amply sustained by the evidence.

We hold that defendant Katschke, aided and abetted by defendant Pickle, unlawfully and willfully misapplied the funds of Tinley and converted them to his own use. We further hold that said defendants, with intent to defraud Tinley, did unlawfully and willfully participate, share in and receive money, profits and benefits, which Katschke obtained in funds disbursed by Tinley to Central States in connection with purported mortgage loans which he caused to be granted by Tinley. All of the actions of both defendants during the various steps of the foregoing transactions support the conclusions which we reach. We find no error committed by the district court as charged by defendants.

For these reasons, the judgments from which this appeal was taken are affirmed.

Judgments affirmed.